**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

YANCEY R. L. DOUGLAS,

    Petitioner - Appellant,

v.

JIM FARRIS, Warden,

    Respondent - Appellee.

No. 17-6219
(D.C. No. 5:16-CV-01454-C)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Yancey R. L. Douglas, a state prisoner, seeks a certificate of appealability

(COA) under 28 U.S.C. § 2253(c)(1) to challenge the denial of his 28 U.S.C. § 2254

habeas petition. We deny his request for a COA.

## BACKGROUND

On February 4, 2012, Sergeant Furrh and Sergeant Cadena of the Oklahoma

City Police Department saw a silver Mercedes speed through an intersection.

Sergeant Cadena turned on the patrol car's emergency lights and pursued the

Mercedes, which stopped within a block of being signaled to do so. The Mercedes

had dark tinted windows, so the officers asked the occupants to roll them down. After

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

they did so, the officers were able to see that Douglas was the driver, and a woman was the front-seat passenger. Upon request, Douglas gave Sergeant Cadena his driver's license and insurance information. But the passenger told Sergeant Furrh that she had no identification. She gave as her name "Shelly Long" and also gave a birthdate.

The officers returned to their patrol car to check the occupants' identification information. Douglas's information came back as valid. Sergeant Furrh then entered "Shelly Long" into the in-car computer, and after some difficulty, he found an entry with the birthdate and name given, but for someone of a different race than the passenger. Sergeant Furrh then decided to question the passenger.

Sergeant Furrh re-approached the Mercedes, and Sergeant Cadena hung back to act as backup. Sergeant Furrh asked Long to exit the car. She did so after some hesitation, and as she got up, Sergeant Furrh saw a firearm on the passenger seat. He shouted "gun" to alert his partner. R. vol. 4 at 754:1–5. Sergeant Furrh then reached for the gun. But Douglas put the car into gear and began to drive away. At that point, Sergeant Furrh was "waist deep with" his "whole entire upper body in the car" as he grabbed the gun, so he twisted out of the car, but it still "clip[ped]" him. *Id.* at 755:18–19, 756:15.

Sergeant Furrh ran back to the patrol car, and jumped into the passenger's seat. Meanwhile, Sergeant Cadena had hopped back into the driver's seat of the patrol car, and together, they pursued the Mercedes. The pursuit lasted a few minutes. Douglas

2

eventually stopped the vehicle and fled on foot, but an officer who had joined the pursuit subdued and arrested him.

The State of Oklahoma charged Douglas with one count of being a felon in possession of a firearm, *see* Okla. Stat. tit. 21, § 1283; one count of aggravated attempting to elude a police officer, *see* Okla. Stat. Ann. tit. 21, § 540A(B); one count of obstructing an officer, *see* Okla. Stat. Ann. tit. 21, § 540; and one count of assault and battery with a dangerous weapon, *see* Okla. Stat. Ann. tit. 21, § 645. At a preliminary hearing, the trial court dismissed the charge of aggravated attempting to elude a police officer. And on October 22, 2014, a jury found Douglas guilty on the remaining counts.

Six months later, Douglas filed a Motion for Production of Brady Material, and a week later, he filed a Motion for a New Trial. At sentencing, the trial court denied both motions. The trial court then sentenced Douglas to ten years' imprisonment on the felon-in-possession charge, six months and a $500 fine on the obstructing-an-officer charge, and seven years on the assault-and-battery-with-a-dangerous-weapon charge, all to run consecutively.

On direct appeal to the Oklahoma Court of Criminal Appeals (OCCA), Douglas argued, among other things, that Oklahoma had violated the rule of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by withholding from him until after trial a Computer Assisted Dispatch Report (CAD report) that, he said, conflicted with Sergeant Cadena's and Sergeant Furrh's trial testimonies. And he argued that if the CAD report had been disclosed to the defense before trial, he could have used it to

3

impeach the officers. Specifically, Douglas alleged that the CAD report showed that the officers in fact didn't call in any record checks on him or Long, as they had testified.

The OCCA determined that the record conflicted regarding whether the State had first disclosed the CAD report before trial. But because the officers' testimonies were "corroborated by" the CAD report disclosed before sentencing (from the State's perspective, for the second time),[1] the court concluded that the CAD report wasn't material. R. vol. 1 at 79; *see also* R. vol. 2 at 455 (CAD report showing two inquiries entered by Sergeant Cadena on the day of the traffic stop, one for Douglas and one for Long). And so, the court determined, *Brady* didn't even require disclosure, because "nothing in the CAD report would have impeached the officers' testimony." R. vol. 1 at 82. The OCCA thus affirmed Douglas's convictions.

Douglas then filed for post-conviction relief in the District Court of Oklahoma County, arguing, among other things, that his direct-appeal counsel had been ineffective for failing to raise the issue of his trial counsel's ineffectiveness on the *Brady* CAD report issue. The state district court disagreed, remarking that Douglas's direct-appeal counsel's brief "was well written and raised a number of viable contentions" and further noting that just because "counsel did not raise [] additional

---

[1] In response to Douglas's Motion for a New Trial which argued that the district attorney failed to disclose the CAD report before trial warranted in violation of *Brady*, the Oklahoma County District Attorney argued that the assistant district attorney who tried Douglas had received the CAD report by email on September 9, 2013, and had placed the report in Douglas's case file. And the district attorney alleged that Douglas's defense counsel reviewed that case file and all the evidence within it on October 14, 2014.

attacks on trial counsel's performance . . . does nothing to evince a deficient performance." R. vol. 1 at 97. So it denied Douglas's post-conviction application. Acting pro se, Douglas appealed this denial to the OCCA. *Id.* at 90. The OCCA affirmed, determining that "[c]ontrary to [Douglas's] claims, appellate counsel thoroughly litigated these claims in [Douglas's] direct appeal," meaning that Douglas had failed to establish that his appellate counsel had performed deficiently. *Id.*

On December 21, 2016, Douglas, again acting pro se, filed a habeas petition in the United States District Court for the Western District of Oklahoma. *Id.* at 6. He alleged that his direct-appeal counsel

> was ineffective for not raising the Issues of the trial Judge and not submitting the documentation of the in-cam[e]ra hearing on September 9th 2013. Appellate counsel was ineffective also for not submitting the news channel segment of Oklahoma stop and identify laws, or the traffic stop tapes.

*Id.* at 11. In light of Douglas's pro se status, the magistrate judge liberally construed this claim (in part) as arguing that Douglas's direct-appeal counsel "should have . . . challenged the State's failure to produce the Computer Assisted Dispatch Report ("CAD") discussed at the September 9, 2013, in-camera hearing and/or submitted the CAD report to the OCCA." R. vol. 2 at 426. The magistrate judge rejected this *Strickland* claim, concluding that Douglas's direct-appeal counsel had raised the *Brady* CAD report issue. The district court adopted the magistrate judge's Report & Recommendation, and denied Douglas's application for a certificate of appealability.

**DISCUSSION**

To proceed with his appeal, Douglas must obtain a COA. 28 U.S.C.

§ 2253(c)(1). To obtain a COA, a petitioner must make "a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "To make such a showing,

an applicant must demonstrate 'that reasonable jurists could debate whether . . . the

petition should have been resolved in a different manner or that issues presented were

adequate to deserve encouragement to proceed further.'" *Allen v. Zavaras*, 568 F.3d

1197, 1199 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"Where a district court has rejected the constitutional claims on the merits . . . [t]he

petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Here, the issue is whether Douglas received ineffective assistance of direct-appeal

counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984) when his direct-

appeal counsel allegedly inadequately briefed his *Brady* CAD report claim before the

OCCA.[2]

The Antiterrorism and Effective Death Penalty Act (AEDPA) limits our review

of claims decided by the state court on the merits. *See* 28 U.S.C. § 2254(d)(1), (2).

We evaluate the state-court decision to see if it is "contrary to, or involves an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or resulted in a decision that was based on an

---

[2] Douglas "abandon[ed] his claims with respect to the recusal of the state trial judge and the failure to submit the news channel segment on Oklahoma stop and identify laws or the traffic stop tape." Appellant's Opening Br. at 24 n.6.

6

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*; *see Snow v. Sirmons*, 474 F.3d 693, 696 (10th Cir. 2007). The OCCA resolved Douglas's *Strickland* claim on the merits, determining that "[t]here is nothing in this case to indicate . . . had appellate counsel argued the issue differently on appeal it would have changed the result of his appeal. . . . Contrary to Petitioner's claims, appellate counsel thoroughly litigated these claims in Petitioner's direct appeal." R. vol. 1 at 90. So we review Douglas's claim as directed by § 2254(d)(1) and (2).

*Strickland* governs ineffective-assistance-of-counsel claims, including those complaining of appellate counsel's performance. *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). When a petitioner alleges that his appellate counsel ineffectively assisted him by failing to raise an issue, "we look to the merits of the omitted issue." *Id.* Now represented by counsel in the instant habeas appeal, Douglas contends that the magistrate misunderstood his claim, namely, that his direct-appeal counsel had inadequately briefed the *Brady* CAD report issue, not that his direct-appeal counsel failed to raise it.

But Douglas didn't make this inadequate-briefing argument to the district court. In Douglas's pro se federal habeas petition, he contended that his direct-appeal counsel had ineffectively assisted him by "not submitting" the CAD report to the OCCA, which we construe to mean that his direct-appeal counsel didn't raise the *Brady* CAD report issue. R. vol. 1 at 11. The argument that direct-appeal counsel failed to "submit" the CAD report isn't an argument that direct-appeal counsel

7

inadequately briefed the *Brady* CAD report issue. So we see no debatable legal issue concerning the magistrate judge's recommendation that Douglas's *Strickland* claim must fail because direct-appeal counsel didn't omit the *Brady* argument.

Nor could Douglas challenge the adequacy of direct-appeal counsel's briefing on the *Brady* CAD report issue. In the brief, direct-appeal counsel alleged that "[t]he CAD report conflicted with the officers' trial testimony, and had it been disclosed to the defense prior to trial, it could have been used to impeach the officers." *Id.* at 54. Douglas's present argument is the same—that the CAD report wasn't disclosed before trial, keeping him from using it to impeach Sergeant Cadena and Sergeant Furrh. So the district court properly concluded that Douglas's direct-appeal counsel had raised the *Brady* CAD report issue—and absent an omitted issue to review on the merits—the district court properly determined that the OCCA didn't make a decision contrary to controlling law.[3]

---

[3] Douglas also requests a 28 U.S.C. § 2254(e) evidentiary hearing on the question of whether the State disclosed the CAD report before trial. But because he hasn't proven "by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," such a hearing isn't warranted. 28 U.S.C. § 2254(e)(2)(B); *see also* R. vol. 2 at 455 (CAD report showing two inquiries entered by Sergeant Cadena on the day of the traffic stop, one for Long and one for Douglas).

**CONCLUSION**

We deny Douglas a COA and dismiss this appeal.

Entered for the Court

Gregory A. Phillips
Circuit Judge